# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ANIL KUMAR GUPTA, POOJA GUPTA, AND RG, § § § | |
| *Plaintiffs,* § | Civil Action No. 4:22-CV-00650 |
| § | Judge Mazzant |
| v. § § | |
| UR JADDOU, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICE, AND ANTONY J. BLINKEN, SECRETARY OF THE U.S. DEPARTMENT OF STATE, § § § § § § § | |
| *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Dkt. #18). Having reviewed the motion, the response, and the relevant pleadings, the Court finds that Defendants' motion should be **GRANTED**.

## BACKGROUND

This immigration dispute involves claims of unreasonable withholding and delay stemming from the federal government's visa retrogression policy. Plaintiffs Anil Kumar Gupta, Pooja Gupta, and RG are Indian nationals who reside in Collin, County, Texas (Dkt. #13 ¶¶ 1–3). Plaintiffs are currently in lawful H-1B and H-4 non-immigrant status, and they have resided in the United States for a decade (Dkt. #13 ¶¶ 76–77).[1] Defendant Ur Jaddou is the Director of the United States Citizenship and Immigration Service ("USCIS"), and Defendant Antony Blinken is the Secretary of the United States Department of State (the "State Department") (Dkt. #13 ¶¶ 4–5).

---

[1] Plaintiff Anil Kumar Gupta is in lawful H-1B status (Dkt. #13 ¶ 76). Plaintiffs Pooja Gupta and RG, who are, respectively, Anil's spouse and minor child, are in lawful H-4 status. *See* 8 U.S.C. § 1101(a)(15)(H).

Plaintiffs' claims are rooted in their contention that Defendants have unlawfully withheld and delayed the adjudication of Plaintiffs' employment-based "adjustment of status" applications for permanent residence through a policy of "retrogression" (Dkt. #13 ¶¶ 94–112). Before addressing the specifics of Plaintiffs' claims, an overview of the relevant statutory and regulatory framework is necessary.

I.      **Statutory and Regulatory Background**

The process by which non-citizens obtain visas to enter and permanently reside in the United States is governed by the Immigration and Nationality Act ("INA"). 8 U.S.C. §§ 1101–1537. Enacted in 1952, the INA was designed as a sweeping statute intended to overhaul and "revise the laws relating to immigration, naturalization, and nationality." *See, e.g.*, *United States v. Machic-Xiap*, 552 F. Supp. 3d 1055, 1068–69 (D. Or. 2021) (quoting Immigration and Nationality Act of 1952, Pub L. No. 82-414, 66 Stat. 163). Since its enactment, the INA has been amended several times, most notably in 1990. *See, e.g.*, Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978. The 1990 Amendment significantly increased the worldwide limits on visa allocation and created separate preference categories for family-sponsored ("FS") and employment-based ("EB") visa applications. *Id.*; 8 U.S.C. §§ 1151–53.[2] In addition to worldwide limits, the INA now sets per-country limits for certain countries to which an applicant may be "chargeable" (typically the applicant's country of birth). *Id.* § 1152.

Under the INA, a non-citizen who hopes to receive permanent resident status must file an adjustment of status application (called an I-485 form) and receive approval. *Id.* § 1255(a). For

---

[2] Indeed, within the broader EB category, there are several preference categories. The three main categories—EB-1, EB-2, and EB-3—each receive 28.6% of the per annum allocation of 140,000 EB visas per fiscal year. *Id.* §§ 1151(d), 1153(b)(1), (2)(A), (3)(A). EB-1 applicants are those with "extraordinary ability," including "[o]utstanding professors and researchers" and "[c]ertain multinational executives and managers. *Id.* § 1153(b)(1)(A)–(C). EB-2 applicants are "professionals holding advanced degrees" and "persons with exceptional ability." *Id.* § 1153(b)(2). And finally, the EB-3 category is a catchall for workers who do not qualify for EB-1 or EB-2 status, including "[s]killed workers, professionals, and other workers." *Id.* § 1153(b)(3).

an application to be approvable, a visa number must be available both at the time the applicant files the I-485 form and at the time when USCIS adjudicates the application. *Id.* § 1255(a)–(b). In practice, the process of approving I-485 forms is a conjunctive effort between USCIS and the State Department. USCIS has jurisdiction to adjudicate an I-485 application for adjustment of status. *See* 8 C.F.R. § 245.2(a)(1). But USCIS cannot approve an I-485 application "until an immigrant visa number has been allocated by the Department of State." *Id.* § 245.2(a)(5)(ii). And, in allocating visa numbers, the State Department must comply with the worldwide and per-country limits on the number of employment-based preference immigrant visas established by Congress. 8 U.S.C. § 1151(a)(2). To process these congressionally imposed limits in an orderly manner, the Secretary of State is authorized to "make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year . . . and to rely upon such estimates in authorizing the issuance of visas." 8 U.S.C. § 1153(g).

The State Department makes these estimates based on reports from consular officers and USCIS officers. *See* 22 C.F.R. § 42.51. The State Department also considers several variables in determining how many visa numbers to make available, such as past number use, expected future number use, and estimates of additional USCIS demand. Once the number of available visa numbers has been calculated, the State Department allocates the numbers to applicants. *Id.*; *Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013).

The availability of visa numbers fluctuates based on demand. *Li*, 710 F.3d at 998. When the demand for a particular category or country exceeds the supply of visa numbers available, the category or country is "oversubscribed," and the State Department must impose a "cut-off date" to keep visa allocation within the statutory limits for the given fiscal year (Dkt. #18, Exhibit 1 ¶ 12). The cut-off date is defined as the priority date of the first applicant who could not be

allocated a visa number (Dkt. #18, Exhibit 1 ¶ 12).

Increased visa availability or lower than expected demand may cause the cut-off date to move forward, while decreased visa availability or higher than expected demand for a given month causes the cut-off date to "retrogress" (Dkt. #18, Exhibit 1 ¶ 13). The practical effect of this "retrogression" is that "a priority date that meets the cut-off date one month will not meet the cut-off date the next month." *See* U.S. Citizenship and Immigr. Serv., *Visa Retrogression*, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression (last visited June 28, 2023).

To manage this process, the State Department's Bureau of Consular Affairs publishes a monthly Visa Bulletin that sets out the visa availability for each FS and EB preference category. *See* 8 C.F.R. § 245.1(g). A visa application is "current"—meaning that a visa is "immediately available"—for an applicant in a specific preference category and chargeable country if the applicant's "priority date" is earlier than the cut-off date listed in the Visa Bulletin. The Visa Bulletin includes charts showing the availability of visas by preference category for chargeable countries. *See* U.S. Dep't of State, *The Visa Bulletin*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html (last visited June 27, 2023). For example, the Visa Bulletin for June 2023 shows a cut-off date of January 1, 2011 for EB-2 applicants chargeable to India. *See* U.S. Dep't of State, *Visa Bulletin for June 2023*, https://travel.state.gov/content/dam/visas/Bulletins/visabulletin_June2023.pdf (last visited June 28, 2023).

## II. Plaintiffs' I-485 Applications

Plaintiffs are the beneficiaries of two approved visa petitions with a priority date of September 18, 2014 (Dkt. #13 ¶ 80). Plaintiffs have filed two sets of I-485 applications. The first was filed with USCIS on October 27, 2020 in the EB-3 category and with India as the chargeable

4

country (Dkt. #13 ¶¶ 84–86). The second set was filed with USCIS on May 16, 2022, this time in the EB-2 category (Dkt. #13 ¶ 88). USCIS assigned both sets of I-485s to its Texas Service Center for processing (Dkt. #13 ¶ 87). Plaintiffs allege that their I-485s are "adjudication ready," meaning that Plaintiffs have completed all the screening requirements (including biometric scanning and background checks) necessary for their applications to be decided. (Dkt. #13 ¶¶ 89–94).

According to Plaintiffs, their applications became current in September 2022, when the Visa Bulletin listed a cut-off date of December 1, 2014 for EB-2 applicants chargeable to India (Dkt. #13 ¶ 97).[3] But, on September 6, 2022, the State Department issued an urgent memo to USCIS mandating that "no further authorizations will be made in response to requests for [EB-1] and [EB-2] numbers for the remainder of FY 2022" because the State Department had hit the worldwide limits set by the INA (Dkt. #18, Exhibit 3). As a result, Plaintiffs' applications could not be adjudicated in FY 2022.

And, in the first Visa Bulletin of FY 2023, the cut-off date for EB-2 applicants chargeable to India retrogressed to April 1, 2012—over two years behind the date listed in the prior month's Visa Bulletin. *See* U.S. Dep't of State, *Visa Bulletin for June 2023*, https://travel.state.gov /content/dam/visas/Bulletins/visabulletin_%20October2022.pdf (last visited June 28, 2023). According to the State Department, this retrogression was the product of a significant increase in demand:

> Rapid forward movements of the India E2 final action and application filing dates during FY-2022 were made to maximize number use under the unprecedented high employment limit of 281,507. As a result, heavy applicant demand has materialized and coupled with significantly lower visa number availability for India E2 for FY-2023 as compared to FY-2022, corrective action was required to keep number use within the maximum allowed under the FY-2023 annual limits.

---

[3] *See also* U.S. Dep't of State, *Visa Bulletin for September 2022*, https://travel.state.gov/content/dam/visas/Bulletins /visabulletin_September2022.pdf (last visited June 28, 2023).

*Id.* The retrogression for EB-2 applicants chargeable to India has continued through FY-2023, and the current cut-off date is January 1, 2011. As a consequence of this retrogression, Plaintiffs have not been assigned a visa number and their I-485 applications have not yet been adjudicated.

### III.   Procedural History

Plaintiffs initiated this case by filing their original complaint on July 28, 2022 (Dkt. #1). On August 24, 2022, Plaintiffs submitted an application for a preliminary injunction, which they later withdrew (Dkt. #4; Dkt. #16). Plaintiffs filed their amended complaint on October 3, 2022 (Dkt. #13). Through their amended complaint, Plaintiffs ask the Court to enter "two primary orders: (1) an order restraining, enjoining, and invalidating Defendants' Retrogressions Policies and (2) an order compelling final agency action on Plaintiffs' adjustment of status applications" (Dkt. #13 at pp. 1–2). More specifically, Plaintiffs assert three causes of action under the Administrative Procedures Act ("APA"): (1) an unlawful withholding claim against USCIS, (2) an unlawful withholding claim against the State Department, and (3) an unreasonable delay claim against USCIS (Dkt. #13 ¶¶ 113–31).

Defendants moved to dismiss Plaintiffs' complaint on October 17, 2022 (Dkt. #18). Plaintiffs responded on October 31, 2022 (Dkt. #20). On November 14, 2023, Defendants filed their reply (Dkt. #26).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. FED. R. CIV. P. 12(b)(1); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing

any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (cleaned up). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction "bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## ANALYSIS

The threshold matter before the Court is its ability to hear Plaintiffs' APA claims. The APA allows courts to compel agency action when the action as has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b). That said, a court's authority to compel agency action is "limited to instances where an agency ignored a 'specific, unequivocal command' in a federal statute or binding regulation." *Fort Bend Cnty. v. United States Army Corps of Engineers*, 59 F.4th 180, 197 (5th Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)). For this reason, a claim brought under § 706(1) can only proceed when a plaintiff asserts that an agency (1) failed to take a *discrete* action that (2) it is *required* to take. *See, e.g.*, *Koppula v. Jaddou*, No. 1:22-CV-00844, 2023 WL 3470904, at *2

7

(W.D. Tex. May 15, 2023) (citing *Norton*, 542 U.S. at 64).

In the context of the adjudication of I-485 forms, the Fifth Circuit has recently made clear that, "[a]lthough Congress enacted an aspirational goal of six months, 8 U.S.C. § 1571(b) ("180 days"), there is no clear mandate here such that we can say the USCIS was required to act within six months, or even within a year." *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023) (per curiam). Courts in this circuit have subsequently relied on *Li* to hold that they lack subject-matter jurisdiction over APA claims challenging the adjudication policies of the USCIS and the State Department, including their retrogression policies. *Koppula*, 2023 WL 3470904, at *2 (citing *Li*, 2023 WL 3431237, at *1).

Indeed, the facts and issues present in *Koppula* are virtually identical to those present here—the plaintiffs in that case were also Indian nationals who brought APA claims challenging USCIS's and the State Department's retrogression policies after they were unable to obtain a visa number due to the retrogression that took effect in October 2022. *Id.* Although the I-485s at issue in *Koppula* had been pending for longer than those at issue in *Li*, the court in *Koppula* nonetheless concluded that it lacked jurisdiction over the plaintiffs' claims absent "a clear mandate or binding regulation stating that USCIS or [the State Department] were required to act within the time frame at issue." *Id.*

The same is true here. Without a clear mandate, the Court has no jurisdiction over Plaintiffs' claims. Thus, it must dismiss all claims in this case without prejudice. *See, e.g.*, *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020) (noting that "any dismissal predicated on [Rule 12(b)(1)] must be without prejudice.").

**CONCLUSION**

It is therefore **ORDERED** that Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Dkt. #18) is hereby **GRANTED** and the case is hereby **DISMISSED WITHOUT PREJUDICE**.

The Court will render a Final Judgment consistent with this Memorandum Opinion and Order separately.

**IT IS SO ORDERED.**

**SIGNED this 30th day of June, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE